This is an appeal from a decree of distribution made by the Ocean county orphans court and involves the construction of the will of Henry A. Low, deceased, and the determination of the character of the legacies bequeathed by the first, third and fourth paragraphs of that will. Upon this determination depends the right to the income on the property thus bequeathed accrued since the testator's death. If the legacies are general, the income goes to the residuary legatee; if they *Page 436 
are specific, the income follows the property the subject of those legacies and goes to the particular legatees. The orphans court determined that all of the legacies referred to were specific and decreed accordingly.
With respect to the first paragraph of the will, only that portion disposing of the contents of a safe deposit box is in controversy.
The will, except for its formal parts, is as follows:
"First. All of my right, title and interest in the premises situated at the corner of Washington and Horner streets, Toms River, New Jersey, together with all of the contents [other than moneys and securities] of the house situated thereon, and also all of the personal property which may be contained at the time of my death in the safe deposit box standing in my name in the safe deposit vaults of the National Park Bank of New York, of the city of New York, N.Y., except such portion of said property as I hold in trust under the will of my deceased wife, Maggie J. Low, I give and bequeath as follows:
"Two-eighths (2/8ths) thereof I give and bequeath to my sister-in-law, Ida Grant, and if she does not survive me, then to her next of kin.
"Two-eighths (2/8ths) thereof I give and bequeath to my sister-in-law, Sarah G. Conover, and if she does not survive me, then to her next of kin.
"One-eighth (1/8th) thereof I give and bequeath to my nephew, Russell G. Conover, and if he does not survive me, then to his next of kin.
"One-eighth (1/8th) thereof I give and bequeath to my nephew, Philip Conover, and if he does not survive me, then to his next of kin.
"One-eighth (1/8th) thereof I give and bequeath to my niece, Helen Conover, and if she does not survive me, then to her next of kin.
"One-eighth (1/8th) thereof I give and bequeath to my niece, Alice J. Crist, and if she does not survive me, then to her next of kin.
"Second. I give and bequeath to my niece, Laura E. Lonan, the sum of one thousand dollars ($1,000).
"Third. I give and bequeath to my sister-in-law, Ida Grant, thirty (30) shares of the capital stock of the First National Bank of Toms River, New Jersey.
"Fourth. I give and bequeath to Riverside Cemetery Company, Toms River, N.J., ten (10) shares of the capital stock of the First National Bank of Toms River, New Jersey.
"Fifth. I give and bequeath the sum of one thousand dollars ($1,000) to Emma Bitterlich, who is now in my employ as a domestic, providing she is still in my employ at the time of my death.
"Sixth. All the rest, residue and remainder of my property, real and personal, I give, devise and bequeath to my brother, George C. Low.
"Seventh. I nominate and appoint as executor of this my will the National Park Bank of New York, of the city of New York, N Y, *Page 437 
and I direct that it shall not be required to give any bond or security as such in any court or for any reason.
"Eighth. I authorize and empower my executor to sell, mortgage, lease and dispose of any property, real or personal, of which I may die seized, at public or private sale, at such times and upon such terms and conditions as they, in their discretion, may deem desirable, and to make, execute, acknowledge and deliver all proper writings, deeds of conveyance, bonds, mortgages, assignments, leases and transfers thereof.
"Ninth. I direct my executor to pay out of my general estate any and all inheritance or transfer taxes that may be levied or assessed against the legacies set forth in the second, third, fourth and fifth clauses of this will, so that the legatees therein mentioned shall receive the said respective legacies free from any inheritance or transfer taxes thereon.
"Tenth. It is my wish that the beneficiaries of this will who may so desire may be permitted to receive payment of all or part of their respective legacies in securities belonging to my estate, and for that purpose I authorize and empower my executor to distribute in kind to and among the persons interested in my estate, either in equal or unequal proportions, any stocks, bonds or other securities belonging to my estate, such distributions to be at such valuations as the property to be so distributed shall have been appraised in transfer tax or inheritance tax proceedings had under the laws of the state of which I am a resident at the time of my death.
"It shall be optional with the respective legatees whether they will accept payment of their legacies in kind, and so far as practicable I desire that the respective legatees may select the kind of securities to be distributed to them."
Legacies are usually classified as general, specific and demonstrative.
A general legacy may be defined as one which is payable out of the general assets of a testator's estate, such as a gift of money, or other thing in quantity, and not in any way separated or distinguished from other things of like kind. 28 R.C.L. tit."Wills" 290 § 264.
A specific legacy is a gift by will of a specific article, or a particular part of the testator's estate, which is identified and distinguished from all others of the same nature, and which can be satisfied only by the delivery and receipt of the particular thing given. Ibid., § 263.
A demonstrative legacy partakes both of the nature of a general and a specific legacy. It is a gift of money or other property payable out of or charged on a particular fund in *Page 438 
such a way as not to amount to a gift of the corpus of the fund, or to evince an intent to relieve the general estate from liability in case the fund fails. Two elements are necessary to constitute a demonstrative legacy, viz., it must appear first that the testator intended to make an unconditional gift in the nature of a general legacy, and secondly, the bequest must be given with reference to a particular fund as a primary source of payment. Ibid., § 266.
"The fundamental distinction between general and specific legacies is that the former may be satisfied out of the general assets of the testator's estate without regard to any particular fund, thing or things, while the latter are gifts of particular specified things, or of the proceeds of the sale of such things, or of a specific fund or a definite portion thereof." Thomp.Wills 121 § 139.
The presumption is that a legacy is general and the burden of proof is on the legatee to prove otherwise. 40 Cyc. 1872. But a legacy is usually considered specific when described by its location. Ibid., 1876.
A bequest of partial interests in certain articles, claims or choses in action is specific, but a gift of a fractional part of the estate is general. Ibid., 1877. See, also, Mullins v.Smith, 1 Drew S. 204.
It cannot be held that, because a specific chattel is directed by will to be divided, part to go to one person and the rest to another, that the legacy is demonstrative, rather than specific.In re Jeffrey (L.R.), 2 Eq. 68.
A legacy is also specific though the legatee is permitted to select the particular article or articles that he will take, the kind and number being designated by the will. 18 Am. Eng.Encycl. L. (2d ed.) 716.
The distinctive characteristic of a specific legacy is its liability to ademption. If the identical thing bequeathed is not in existence or has been disposed of so that it does not form part of the testator's estate at the time of his death, the legacy is extinguished or adeemed and the legatees' rights are gone. 28 R.C.L. tit. "Wills" 345 § 341.
These are the legal principles applicable to the construction *Page 439 
of wills, which, I believe, must control my decision in this controversy. After all, "the matter is one wholly of intention; and in this, as in all cases, the intention is to be ascertained from the whole will, viewed in the light of the circumstances of the testator and of his property." 1 Underh. Wills 556 § 406.
See, also, Burnett v. Heinrichs, 95 N.J. Eq. 112.
In Wyckoff v. Perrine's Executors, 37 N.J. Eq. 118 (at p.120), Vice-Chancellor Van Fleet said:
"In deciding whether a legacy is specific or general, the intention of the testator must control, as it must the decision of every other question involving the construction of wills. There is no technical arbitrary rule requiring the use of particular words or expressions to make a bequest specific. * * * The words of exclusion must, I think, be regarded as furnishing an almost infallible test of the meaning of the testator."
I will first consider the controversy respecting the legacies made by the third and fourth paragraphs of the will. These, it will be noted, are respectively of thirty shares and ten shares of stock of the First National Bank of Toms River, New Jersey.
A legacy of stock, whether given in general terms or given as so many shares of the particular stock, is a general legacy wherever the testator does not expressly refer to it as "in my possession," "stock owned by me," "my stock," or "in my name" at the date of the execution of the will, or does not use similar qualifying words. And the mere fact that at the date of the will it appeared that he did own stock and securities of the character bequeathed equal to or greater in value than those devised will not alone make the legacy specific unless the testator shall refer to the identical securities in his possession. 1 Underh.Wills 556 § 408. See, also, Mecum v. Stoughton, 81 N.J. Eq. 319; Savings Investment and Trust Co. v. Crouch, 93 N.J. Eq. 311; Norris v. Thomson's Executors, 16 N.J. Eq. 542; Matter ofKing, 122 N.Y. (App. Div.) 349; 106 N.Y. Supp. 1073.
In determining whether legacies of stock are general or *Page 440 
specific, the inquiry is not whether the testator may not have intended to give the specific shares then owned, but whether it clearly appears that he did so intend, for a clear intention upon the part of the testator must appear in order to make the legacy specific. Mecum v. Stoughton, supra.
These two legacies of bank stock, it seems plain to me, are general and not specific. There is no reference either in the third or fourth paragraphs, or in any other part of the will by which the stock thus bequeathed is earmarked or can be determined to be stock in that bank then owned by the testator. There are no qualifying words such as "my stock," "stock now in my possession," or "stock standing in my name," or "owned by me."Norris v. Thomson's Executors; Burnett v. Heinrichs, supra.
They are clearly within the rule laid down by Vice-Chancellor Leaming in Mecum v. Stoughton, supra, and followed by Vice-Chancellor Backes in Savings Investment and Trust Co. v.Crouch, supra. Nor is there anything in any other part of the will which indicates an intention by the testator to dispose of stock then owned by him; this will, in this respect, being unlike the Berger will construed by Vice-Chancellor Backes in Burnett
v. Heinrichs, supra. These legacies could have been satisfied by the delivery to the legatees of the requisite number of shares of such bank stock either out of stock owned by the testator at the time of his death, or of stock purchased by the executor for that purpose, if the testator had left none as a part of his estate. In this latter event, there would have been no ademption and it would have been the duty of the executor to purchase stock to satisfy the legacies. Proctors for both appellant and respondents, in arguing this question, discuss the fact, among others, of the connection of the deceased, as an officer, with the First National Bank of Toms River. The respondents advance that fact, and others, as a reason for concluding that these legacies are of stock owned by the testator on the date of his will; but the answer to that argument is that those facts do not appear anywhere in the record which is before me. There is nothing whatever in the record to indicate what or how much stock of this or any other kind was owned by the *Page 441 
testator at the date of the will, and it is on the record alone that this decision must be based. But even though these facts were available for consideration they would not, standing alone, control. The intention to make the gift specific must be found in the will itself. While "evidence aliundi is admissible in aid of the intention expressed in the will, it cannot be admitted to express an intention which is nowhere disclosed in the will itself." Savings Investment and Trust Co. v. Crouch, supra. I am, therefore, of the opinion that the legacies made by the third and fourth paragraphs of this will are general, and not specific, and consequently the residuary legatee is entitled to the income accruing on this stock since the death of testator.
As to the first paragraph of the will, it will be noted that it contains a specific devise of real estate and two separate and distinct bequests of personal property. The first of these bequests, in the language of the will, is "All of the contents [other than money and securities] of the house situated thereon." The second is, "Also all of the personal property which may be contained at the time of my death in the safe deposit box standing in my name in the safe deposit vaults of the National Park Bank of New York, of the city of New York, except such portion of said property as I hold in trust under the will of my deceased wife, Maggie J. Low." No question is raised as to the character of the first of these bequests. It is plainly specific. The amount or value of the gift could have been decreased or increased at the pleasure of the testator, after the date of the will and before his death, by the simple expedient of removing some of the contents or adding thereto, and without any alteration of the will itself, a characteristic which to my mind conclusively determines the nature of the legacy as specific; and if the first bequest is specific, then so must also be the bequest of the contents of the safe deposit box. I can see no distinction between the two. The latter gift was subject to ademption pro tanto or in toto in like manner as the former. Assuming that all of the contents of the box had been removed by the testator before his death, what claim would the legatees have had *Page 442 
against the estate? If the legacy were general, they could still have claimed its value out of the general funds of the estate; but how could its value have been determined? In Parrott v.Worsfold, 1 Jac. W. 594, it was said that the liability to ademption was an unfailing test of the character of the legacy. This proposition was denied in Bothamley v. Sherson (L.R.),20 Eq. 304, but the argument there advanced seems to be based upon the idea, long since discarded, that a will speaks as of its date instead of the date of the testator's death; and it assumes that ademption must precede, and cannot be coincident with, the testator's death, a proposition to which I do not agree. It seems to be that the inevitable consequence of ademption had this box been found empty at testator's death, compels the conclusion that the legacy is specific.
It would seem from the argument of counsel for appellant that he has overlooked the fact that one may make a bequest of a specific chattel to two or more persons without destroying the specific character of the legacy. In Mathis, Executor, v.Mathis, 18 N.J. Law 59 (at pp. 61, 62), there was a bequest of $500 in specie to each of four children. It was held that the legacies were not specific but Chief-Justice Hornblower, in delivering the opinion of the court, said: "If the testator had had $2,000 in gold and silver, in a certain bag, or drawer, and had given that specific money to his four children, to be equally divided between them * * * they would no doubt have been specific legacies." See, also, 1 Underh. Wills 556; Prendergast v.Walsh, 58 N.J. Eq. 149; Norris v. Thomson, supra. Other examples of specific bequests of chattels to two or more persons are Smith's Appeal, 103 Pa. 559 (legacy of a sum of money to be divided equally between two legatees); In re Johnson's Estate,170 Pa. 177; 30 Atl. Rep. 636 (bequest of stock to five);Howell v. Hooks (4 Ired. Eq.), 39 N.C. 188 (bequest of note to testator's two daughters); Humphreys v. Humphreys
(Eng.), 2 Cox Ch. Cas. 184 (all stock of testator of certain kind to several nieces); In re Zeile, 74 Cal. 125;15 Pac. Rep. 455 (bequest of stock to relatives in Germany, to be divided as per schedule); Millard v. *Page 443 Bailey (L.R.), 1 Eq. 378 (stock in unequal portions to several children); Perry v. Maxwell (2 Dev. Eq.),17 N.C. 488 (bequest of notes to four); Carpenter's Estate v. Wiley,166 Iowa 48; 147 N.W. Rep. 175 (bequest of money to four);Miller v. Weber, 126 Md. 658; 95 Atl. Rep. 962 (legacy of cash in certain banks to three children). And the general rule is expressed in 40 Cyc. 1872, quoted above. See, also, Mullins
v. Smith, supra, and In re Jeffrey, supra.
These cases show that the dividing of the contents of testator's safe deposit box into eights does not necessarily change the character of the legacy. But counsel for appellant cites In re Fisher (N.Y.) 93 App. Div. 186;87 N.Y. Supp. 567, in support of his contention that this bequest is general and not specific and insists that that case is "on all fours" with the case sub judice, and should control the decision here; but I am unable to agree with this contention. There the will provided —
"I give and bequeath the contents that shall be in my box in the Safe Deposit Company of New York, now situate at 146 Broadway, New York, corner Liberty street, in said city, at the time of my decease, to the following-named persons and in the following proportions, viz.: Two-twelfths thereof to Mary Jane Clark; one-twelfth thereof to each of the daughters of the said Mary Jane Clark,"
and one-twelfth to each of certain other named persons. The real question in controversy there concerned the executor's right to commissions on the contents of this safe deposit box, and by an ingenious line of reasoning the court arrived at the conclusion that as it was necessary for the executor to convert the securities into cash in order to make equal distribution among the several legatees, this fact destroyed the specific character of the bequest and thus the executor became entitled to his commissions. It would seem from that case that in New York executors are not entitled to commissions on the value of specific legacies; but no such problem confronts us here, as in this state executors are entitled to commissions on the whole value of the personal estate irrespective of the character of the legacies. Nor is it necessary that the property be converted in order to make distribution *Page 444 
among the several legatees. The testator in the tenth paragraph of his will expressly authorizes distribution in kind so far as is possible. It is argued that this fact, and the fact that the will provided that in case of distribution in kind legatees were to accept the property at the value placed upon it for inheritance tax purposes, indicates that the testator intended the value of the property bequeathed, rather than the specific thing, to be delivered to the legatee. But in my judgment the contrary intention appears from this provision. In the FisherCase the court said:
"The bequest is specific as to the property bequeathed, but it was not specific as to the particular property to be delivered to a particular legatee, nor could it be made such by any division into twelfths which the will commanded should be done."
This distinction between "property bequeathed" and "particular property to be delivered to a particular legatee" does not appeal to me as at all pertinent to this inquiry. The bequest was certainly specific as to the property to be delivered to all of the legatees collectively; and this, under all the authorities with the single exception of the Fisher Case, so far as I have been able to find, is sufficient to determine the specific character of the legacy. The same distinction might be made with respect to almost any of the bequests of specific property to a number of legatees, examples of which are given above, and yet they were all held to be specific legacies. It seems to me that a determination that a bequest is specific "as to the property bequeathed" is dispositive of the whole question. It is only with respect to the nature of the bequest as applied "to the property bequeathed" that we are concerned. It is the identity of the thing given and not the identity of the legatee, which marks the character of a legacy as specific. That the property goes to a collection of individuals rather than to one, is of no consequence. The legacy being specific as to the property bequeathed, the accrued income necessarily follows that property. But conceding that the Fisher Case means what counsel for appellant says it does, I am unable to follow it, and, of course, it has no binding *Page 445 
force in this state. That case was decided in 1904. In 1916 the New York court of appeals, In re Thompson, 217 N.Y. 111;111 N.E. Rep. 762, held that a legacy of "the contents of my safe deposit box consisting of jewelry, c., excepting my savings bank books therein" was a specific legacy. In that case the court said: "That a legacy of the `contents' of a safe deposit box, desk or chest, plainly means whatever might be therein at the time of the death of the testator, has been generally held" (citing cases, including Prendergast v. Walsh (N.J.),supra, in which there was a specific bequest to several legatees in equal shares). The Thompson Case is a decision of the court of last resort of the State of New York to the effect that a legacy of the contents of a safe deposit box is specific when that legacy is given to one person. As already shown, the general rule is that such a bequest is also specific when made to two or more persons, and it is at least worthy of notice that the New York court here, in support of its decision, cited a New Jersey case expressing the general rule. It is also significant that neither the diligence of counsel nor my own labor has brought to light any decision of any court in agreement with theFisher Case, while numerous cases supporting the general rule as above stated are easily found. But very little help is to be had from the cases, anyway. An attempt to follow so-called precdent in matters of this kind is often beset with pitfalls and dangers. Chancellor Kent once said: "The adjudged cases respecting the construction of wills are of less authority and of more hazardous application than decisions upon any other branch of law." 4 Kent Com. 534. And this is true because it is the intention of the testator that governs such construction, and that intention is not always expressed in uniform language. So long as the language and expressions of one individual differ from another, so long will this difficulty of construction continue. But there should be no difficulty here. The language is plain. The testator's intention must be determined by his own language, not by what we would have him say. By that language he has located the property the subject of his gift; by "words of exclusion" (Wyckoff v. Perrine's Executors, *Page 446 supra) he identified it and separated it from all the rest of his estate, and distinguished it from other property in the same location which he held in trust. The gift can be satisfied only by the delivery of the specific contents of the box. There can be no substitution. If this is not a specific legacy I am unable to classify it. I therefore hold it specific and the legatees named in the first paragraph of the will entitled to the accrued income.
I will advise a decree affirming the decree of the Ocean county orphans court except as to the legacies made by the third and fourth paragraphs of the will and reversing the decree in so far as it determines those legacies to be specific legacies. *Page 447